OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY V. JONATHAN CHOLLETTE.

FILED JUNE 26, 1894. No. 5692.

1. **Liability** of Carriers: INJURIES TO PASSENGERS: NEGLIGENCE. *Chollette v. Omaha & R. V. R. Co.*, 26 Neb., 159, and 33 Neb., 143, followed and reaffirmed.

2. **Review**: Ruling on Motion for New Trial: Failure to Point Out Error. C. sued a railroad company on account of personal injuries sustained by his wife. The jury returned a general verdict for the plaintiff and a number of special findings. The court overruled defendant's motion for a judgment on the special findings and sustained plaintiff's motion for a new trial. A second trial resulted in another verdict and a judgment for plaintiff. The defendant assigned as error the overruling by the court of its motion for judgment on the special findings at the first trial. *Held*, That as it was nowhere pointed out wherein the district court erred in sustaining the motion for a new trial and as there were assignments in such motion referring to matters not preserved in the record, this court must assume that the motion for a new trial was properly sustained and therefore the motion for judgment properly overruled.

3. **Trial**: Special Findings: Negligence: Review. Among such special findings were a number of isolated facts in relation to the conduct of the plaintiff's wife and of the railroad company, upon which defendant sought to have judgment rendered. *Held*, That the court properly refused to render judgment upon such findings, because the inference as to whether such facts constituted contributory negligence was for the jury and not for the court.

4. **Rulings on Admission of Evidence.** Certain rulings upon the admission of evidence examined, and *held* not erroneous.

5. **Railroad Companies**: Liability to Third Persons for Injury to Passengers: Negligence. Section 3, article 1, chapter 72, Compiled Statutes, providing that every railroad company shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, etc., is not restricted in its application to actions by the passengers so injured, but extends to actions by third persons for damages sustained in consequence of such injuries to passengers.

6. **Husband and Wife.** Therefore, the rule of liability in this case by the husband for injuries sustained by the wife is to be determined by the statute referred to.

7. **Contributory Negligence**: Pleading: Review. Whether a want of ordinary care or "criminal negligence" on the part of the plaintiff himself would defeat a recovery in this case is a question not examined, for the reason that the defendant did not plead the plaintiff's negligence but only that of his wife.

8. **Construction of Statute Exempting Railroad Companies from Liability for Injury to Passengers on Platform of Moving Cars.** Section 110 of chapter 16, Compiled Statutes, providing that in case any passenger of a railroad shall be injured while on the platform of a car while in motion, in violation of the printed regulations of the company posted up at the time, in a conspicuous place inside of its passenger cars, then in the train, said company shall not be liable for the injury, etc., being a limitation upon a recognized liability, is to be strictly construed; and in order that such statute shall be applicable the car must be in motion when the accident occurs and there must be some connection of cause and effect between the injury of the passenger and his being upon the platform, and the notices required by the statute must be posted in the cars of the train wherein the accident occurs.

9. **Husband and Wife: MARRIED WOMAN'S ACT.** The married woman's act does not deprive the husband of his right of action for the loss of services or companionship of his wife, and notwithstanding that act he may still recover to the extent that the injury sustained by his wife incapacitated her from performing the duties that reasonably devolve upon her in the marriage relation. *Mewhirter v. Hatten,* 42 Ia., 288, followed.

10. **Where a married woman is injured by the negligence of another** two causes of action arise,—one for the wife, for physical and mental suffering, past and future, loss of her earning capacity, and other elements ordinarily existing in such cases; the other, for the husband, for the loss of his wife's services and society and for reasonable expenses by him incurred.

ERROR from the district court of Saunders county. Tried below before BATES, J.

The facts are stated by the commissioner.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error:

The court erred in admitting in evidence the plaintiff's statement of the remark make by the brakeman. (1 Greenleaf, Evidence, sec. 113; *Felt v. Amidon,* 43 Wis., 471; *Hazleton v. Union Bank of Columbus,* 32 Wis., 49; *Lund v. Tyngsborough,* 9 Cush. [Mass.], 36; *Kittle v. St. John,* 7

Neb., 73; *Village of Ponca v. Crawford*, 18 Neb., 551; *Gale Sulky Harrow Co. v. Laughlin*, 31 Neb., 103; *Adams v. Hannibal & St. J. R. Co.*, 74 Mo., 553; *Patterson v. Wabash, St. L. & P. R. Co.*, 19 N. W. Rep. [Mich.], 761; *Luby v. Hudson River R. Co.*, 17 N. Y., 133; *McCartny v. State*, 1 Neb., 123.)

The court erred in not permitting the conductor to testify whether or not the train stopped a sufficient length of time for the passengers to alight. (Lawson, Expert and Opinion Evidence, pp. 86, 87; *Mobile & M. R. Co. v. Blakeley*, 59 Ala., 472; *Sioux City & P. R. Co. v. Finlayson*, 16 Neb., 586; *Ardesco Oil Co. v. Gilson*, 63 Pa. St., 146; *Seaver v. Boston & M. R. Co.*, 14 Gray [Mass.], 466.)

A married woman is entitled to her own time, and is not under any legal obligation to contribute to, or render her services for, her husband. He has no interest in, or right of action for, any loss resulting from personal injury to her. (*Lewis v. Babcock*, 18 Johns. [N. Y.], 443; Schouler, Domestic Relations, 107–110, 243; *Weldon v. Winslow*, L. R. 13, Q. B. Div. [Eng.], 786; 1 Chitty, Pleading [11th Am. ed.], 73; *Connors v. Connors*, 4 Wis., 112; *Elliott v. Bentley*, 17 Wis., 591; *Todd v. Lee*, 15 Wis., 365*; Compiled Statutes, sec. 4, ch. 53; *Pope v. Hooper*, 6 Neb., 178; *Omaha Horse R. Co. v. Doolittle*, 7 Neb., 481; *Shortell v. Young*, 23 Neb., 408.)

The measure of damages was erroneously submitted in an instruction of the court under which the jury was allowed to consider the amount expended in employing physicians and for medicine. There was no evidence that such expenses were reasonable and necessary. (*Union P. R. Co. v. Ogilvy*, 18 Neb., 643; *Smith v. Evans*, 13 Neb., 316; *Walrath v. State*, 8 Neb., 91; *Steele v. Russell*, 5 Neb., 216; *Holmes v. Boydston*, 1 Neb., 346; *Galveston H. S. & A. R. Co. v. Thormsberry*, 17 S. W. Rep. [Tex.], 521; *International & G. N. R. Co. v. Simcock*, 17 S. W. Rep. [Tex.], 47; 1 Greenleaf, Evidence, sec. 124.)

It was error for the court to refuse the seventh instruction asked by the defendant. (*Cheney v. Boston & M. R. Co.*, 11 Met. [Mass.], 121; *O'Brien v. Boston & W. R. Co.*, 15 Gray [Mass.], 20; *O'Neill v. Lynn & B. R. Co.*, 29 N. E. Rep. [Mass.], 630.)

*Simpson & Sornborger, contra*, cited: *Chollette v. Omaha & R. V. R. Co.*, 26 Neb., 159; *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143; *Mewhirter v. Hatten*, 42 Ia., 291.

Irvine, C.

In 1886 Jonathan Chollette and Eliza Chollette, his wife, boarded a train at Wahoo for the purpose of going to Elkhorn. Mrs. Chollette was injured either in alighting from the train at Elkhorn or by being thrown from the steps of the car as she stood there preparing to alight. This action was brought by Jonathan Chollette to recover damages for the loss of his wife's services and society and the expenses of her care and treatment. A former action brought by the wife on her own behalf on account of the same injuries has been twice before this court and is reported in 26 Neb., 159, and 33 Neb., 143. All the questions presented upon either hearing of the former case are again presented by this record. We will not here restate these questions nor re-examine them. As to the questions involved in the case reported in 33 Neb., this court has repeatedly declared the law to be in accordance with the views there expressed. As to the questions presented upon the first hearing reported in 26 Neb., whatever might be the writer's individual views, were the questions now presented for the first time, the decision has stood without question for more than five years, and the conclusions there reached would not now be disturbed in the absence of a clear conviction on the part of the court that a fundamental error had then been committed.

A brief statement of the issues in this case may be nec-

essary to an understanding of the questions first presented by this record.   The plaintiff alleged that the railroad company failed to stop the train at Elkhorn a sufficient time to permit his wife to alight and negligently started its cars before she had reasonable time to alight, and while alighting caused her to be violently thrown upon the platform without any negligence upon her part.   In addition to the defense set up in the former case and passed upon in the first hearing thereof the defendant answered denying any negligence upon, its part and averring "that the injuries received by the said Eliza occurred by reason of the carelessness and negligence of the said Eliza contributing thereto;" that the injuries she received were sustained while she was standing upon the platform of the car while it was in motion; that there was posted in a conspicuous place inside said car printed regulations warning passengers not to stand upon the platform while the car was in motion; that there was inside said car sufficient and safe seats and accommodations for her; and that there was no necessity of her standing or being upon the platform. Further answering the defendant alleged that theretofore the said Eliza, with plaintiff's knowledge and consent, brought suit upon the same cause of action and recovered thereon, and pleaded that action in bar of the present. There was a trial in 1891, resulting in a general verdict for the plaintiff for $150 and a number of special findings. The defendant moved for judgment notwithstanding the general verdict upon the special findings, and the plaintiff moved for a new trial.   The court overruled the defendant's motion for judgment and sustained the plaintiff's motion for a new trial.   Upon the second trial there was a general verdict for the plaintiff for $900, upon which judgment was rendered, and which judgment plaintiff seeks to reverse.

1. The defendant procured to be settled a bill of exceptions embracing the proceedings upon the first trial, and

now complains that the court erred in sustaining the plaintiff's motion for a new trial and in overruling defendant's motion for judgment. We cannot say that there was any error in sustaining the motion for a new trial. There is nothing in the record to indicate upon what ground the motion was sustained and the defendant does not point out wherein the court erred, if at all, in sustaining the motion. Among the many grounds assigned in that motion was the giving of certain instructions. The transcript of the record before us contains certain instructions given by the court upon that trial, but they are not consecutively numbered; they do not appear to be complete, and several of those of which the plaintiff complained in his motion do not appear at all in this record. If the court was right in awarding a new trial, it follows that it was right in refusing to enter judgment for defendant upon the special findings made at the first trial; but aside from this the court was not warranted by those findings, if they had stood, in rendering judgment notwithstanding the general verdict. These findings were for the most part of isolated facts. To have entered judgment thereon would have required the court to draw the inference that defendant was not negligent or that Mrs. Chollette was negligent from the facts so found. It has been repeatedly held that where different inferences may reasonably be drawn from the facts, the ultimate question as to negligence is for the jury, and, as held in *Omaha & R. V. R. Co. v. Chollette,* 33 Neb., 143, the facts of this case were such as to render that inference one for the jury and not for the court. Among the findings were the following: "22. Was the plaintiff's wife, in her effort to alight from the car in question, guilty of the want of any ordinary care contributing to her injury? No." "23. Were the agents and employes of the Union Pacific Railroad Company guilty of negligence in not stopping long enough to allow the plaintiff to alight from the train? Yes." Following this was a finding

that the injury resulted from the negligence of the railway company without any contributory negligence on the part of the plaintiff and his wife. These direct findings upon these issues properly left to the jury could not be disregarded by the court's determining that upon other special findings the jury should have drawn the inference of contributory negligence. Section 110, chapter 16, Compiled Statutes, provides the following: "In case any passenger on any railroad shall be injured while on the platform of a car while in motion, * * * in violation of the printed regulations of the company posted up at the time in a conspicuous place inside of its passenger cars then in the train, such company shall not be liable for the injury, provided such company furnished room inside its passenger cars sufficient for the accommodation of its passengers." The jury found that there was posted inside the car such a notice, and that there were at the time seats sufficient to accommodate the passengers; but it also found that Mrs. Chollette did not go upon the platform when the train was in motion, nor was there any finding that she remained upon the platform voluntarily while the car was in motion, or that her injury was due to her remaining on the platform under such circumstances. There were, therefore, no findings sufficient to bring the case within the provisions of section 110. The court, therefore, did not err in refusing to enter judgment on the special findings at the first trial.

2. Passing now to the errors assigned relating to the second trial, we will first consider two objections which were made to rulings upon the evidence, the only assignments upon this subject which are referred to in the briefs. One of these assignments is that the court erred in overruling the objection to the following language testified to by the plaintiff as used by the brakeman: "It beats hell they cannot stop long enough to let people get off." The plaintiff had been asked the following question: "Now, when the conductor went out, what transpired? You may

tell that story in your own way, right through as you think of it." There was no objection to this question, and the witness proceeded to state the circumstances of the accident at a considerable length. He had just stated that the engineer seemed to open the engine and that the train lurched so that it wheeled his wife half way round off the steps, and proceeded, "then the brakeman grabbed hold of the rail on the end of the baggage car right opposite to where we were standing, and as he done so he made the remark that 'it beats hell they cannot stop long enough to let people get off.'" The defendant then moved to exclude the last part of the answer, as incompetent, immaterial, and irrelevant, which motion was overruled. We think that this remark was fairly admissible as a part of the *res gestæ.* This witness and others stated what other people said as Mrs. Chollette was about to alight. It would seem that the remark of the brakeman was concurrent in time with the accident, and while it did not serve to characterize any act of his at the time, still, being contemporaneous with the principal fact and made under such circumstances as to justify the inference that it was a spontaneous exclamation, we think it was not reversible error to refuse to strike it out. In *Hewitt v. Eisenbart,* 36 Neb., 794, it was said that the trial court must be left largely to exercise its discretion in determining whether such remarks are made under circumstances justifying their admission as a part of the *res gestæ.* If a question had been asked tending to call forth this answer, and objection had been made thereto, we would have been more doubtful upon the point; but when the defendant permitted the witness, without objection, to relate in narrative form the whole transaction, we would hesitate to reverse a judgment even if a statement ordinarily inadmissible crept in in the course of that narrative. The conductor of the train when on the stand was asked the following question: "Now, having reference to the number of passengers on your train and the number of

passengers which were through passengers, and having reference to the ⚬business of your train at Elkhorn station, I will ask you whether or not the train stopped a sufficient length of time for such passengers as were on that train to alight therefrom, using due diligence?" An objection to this question was sustained. Whether or not such a question would under any circumstances be admissible, the witness had just before shown himself incompetent to answer this question, by testifying that he did not remember how many passengers there were that morning for Elkhorn station. Not knowing this fact, he could not know whether or not the train stopped a sufficient time to permit this unknown number of passengers to alight. Furthermore, he had just testified that the train had stopped half a minute at the station, and immediately afterwards he testified, without objection, that fifteen seconds was ample time to permit the passengers to alight. The defendant, therefore, got all the benefit that it could have had from an answer to the question objected to.

3. Complaint is made of a series of instructions which left the liability of the defendant to be determined in accordance with the provisions of section 3, article 1, chapter 72, Compiled Statutes. This section is as follows: "Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the persons injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." The instructions complained of were substantially the same as those approved in *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143. The constitutionality of the act now questioned by defendant has been impliedly recognized in a number of cases and distinctly affirmed in *Union P. R. Co. v. Porter*, 38 Neb., 226. It is urged that the statute is not applicable to this case; that

it refers only to damages sustained by the person injured and not to consequential damages sustained by a third person on account of those injuries. The language of the act is such as to lend countenance to this construction, and the writer was at first of the impression that the term "damages inflicted upon the person of passengers" should be confined to damages sustained by passengers through injuries to their own persons. This section was, however, a portion of an act passed in 1867, entitled "An act to define the duties and liabilities of railroad companies." In its first section it required railroads to erect and maintain fences sufficient to prevent cattle, horses, sheep, and hogs from going on the railroad, and provided that in case of failure to erect and maintain such fences the railroad should be liable for "any and all damages which shall be done * * * to any cattle, horses, sheep, or hogs thereon." (Gen. Stats., p. 202.) This language in the same act indicates that the legislature used the word "damage" not in its technical sense but in the sense of injury. Unless in the two sections of this same statute we should give this language different constructions, we must hold that in the section in question it was intended to refer to legal damages sustained by any person on account of injuries inflicted upon passengers; otherwise we would be led to the absurd conclusion that in the first section the action for injuries caused by failing to erect and maintain fences could only be maintained by the cattle or other animals injured.

4. It is next complained that the court erred in giving instructions to the effect that the negligence which would defeat a recovery must be the gross negligence of either the husband or the wife. The error which it is particularly claimed lies in this instruction is that conceding that Mrs. Chollette's negligence must be gross in order to prevent a recovery, still the statute does not extend to third persons, and the court should have instructed the jury that a recovery would also be prevented if the injury was contrib-

uted to by the failure of plaintiff himself to exercise ordinary care. We cannot inquire into the rather interesting legal question presented by this argument, for the reason that the defendant in its answer does not plead contributory negligence on the part of the plaintiff but only contributory negligence on the part of his wife. The instruction was, therefore, more favorable to the defendant than the pleadings justified by permitting an inquiry at all into the question of plaintiff's negligence.

5. A number of instructions requested by the defendant were given. Many were refused. The only one of these to which attention is specially directed in the brief is as follows: "7. You are further instructed that if you shall find from the evidence that the plaintiff's wife at and before the time of her injury had notice that it was usual and customary upon passenger trains to have a notice upon metal plates upon the car or door thereof, containing a notice warning passengers not to stand upon the platform while the train was in motion; and if you shall further find from the evidence that the plaintiff's wife in the exercise of ordinary care and attention might have seen such plate upon said car or car door; and if you shall further find from the evidence that with such knowledge or notice the plaintiff's wife then went upon the platform of the car while the train was in motion, and that while so upon the platform of said train thrown from the said car to the station platform, and that she then and there received the injuries of which complaint is made, then the law is that for such an injury received under such circumstances there can be no recovery, and your verdict must be for the defendant." It was evidently intended by this instruction to present the law as stated in section 110, chapter 16, Compiled Statutes, already quoted. Such a statute, being a limitation upon liability, should be strictly construed. (*Willis v. Long Island R. Co.*, 32 Barb. [N. Y.], 398.) It certainly was not intended by the statute to absolutely exempt a railroad company from

liability for all injuries sustained by passengers while on
the platform of a car in motion regardless of whether
the passenger's being upon the platform was the cause
of the injury or contributed thereto.   The instruction re-
quested told the jury that if Mrs. Chollette went upon the
platform while the train was in motion there could be no
recovery, if while upon the platform she was thrown from
the car.   It did not tell the jury that the car must be in
motion at the time the accident occurred, to make the stat-
ute applicable; nor did it tell the jury there must be a con-
nection of cause and effect between her being on the plat-
form and the injury.   Furthermore, it instructed the jury
that the company would not be liable under such circum-
stances if it was usual and customary on passenger trains
to have a metal plate upon the car door warning passengers
not to stand upon the platform while the car was in motion,
without submitting to the jury the question whether such
warnings were posted in a conspicuous place upon the cars
of this particular train.   The instruction was, therefore,
vicious in three respects and was properly refused.   As to
other instructions refused they were objectionable in group-
ing together certain facts and instructing the jury that if
those facts existed they would as a matter of law constitute
contributory negligence.   Such instructions should not be
given except where there can be no reasonable difference of
opinion as to the inference to be drawn. (*Missouri P. R.
Co. v. Baier*, 37 Neb., 235.)

6. Certain assignments may be grouped in relation to
the defense alleged by reason of the prosecuting of the
former action.   The evidence shows that the first action
was begun originally by Chollette and his wife jointly, and
prayed for damages both to the wife and to the husband.
The case was dismissed as to the husband and an amended
petition, filed by the wife alone, praying for the damages by
her sustained.   The case was tried on this amended petition.
Even under the common law, where the husband and wife

joined in an action for injuries to the wife, this action was not a bar to another action by the husband for loss of his wife's services, although it was then usually held that the judgment in one action was *res judicata* as to the right to recover in the other; but the actions were separate, the measure of damages different, and no damages were recoverable in the second case which were recoverable in the first.    Under our law, the husband not being a party to the first action, one cannot be said, in any view of the case, to be a bar to the other.    In the first action the wife could recover for physical and mental anguish and for her own loss of time and incapacity.    Under our married woman's act she could, in a proper case, recover for loss of earnings and decreased ability to conduct her business.    In this case the husband recovers for the loss of his wife's services and society and for reasonable expenses by him incurred.    As we shall presently show, the court carefully excluded from the jury in this case all the elements of damages which the wife was entitled to recover in her own name.

7. Upon the measure of damages the following instruction was given: "If, from the evidence in this case, and under the instructions of the court, you should find for the plaintiff, you are instructed that the only items of damages that you can find in favor of the plaintiff are: First—The value of the loss of services and companionship of his wife to the extent that such injuries have incapacitated her from performing all the duties of a wife that reasonably devolve upon her in the marriage relation.    Second—For money laid out and expended in employing physicians and expended for medicines to cure her of such injury, if any. Third—His time, or that of his family, if any shown, for nursing her during her sickness from such injury, if any, not to exceed in all the sum of $25,000."    Complaint is now made that each of these three subdivisions was erroneous, but in the motion for a new trial the third was not complained of, so that it will not here be considered.    The

complaint made of the second subdivision is that there was no evidence of the reasonable expenditures of the husband in employing physicians and for medicines, and that, therefore, this branch of the instruction should not have been given. There was evidence sufficient to justify the jury in finding that the actual expenses incurred were about $150, but we agree with counsel that there was no evidence to show that such expenditures were reasonably incurred; but at the request of the defendant the court charged the jury that "for damages on account of care for medical attendance and for medicines such damages could not exceed the sum of $150." Having thus asked an instruction submitting this element to the consideration of the jury, the defendant cannot complain because the court of its own motion submitted the same question. As to the first subdivision of the instruction, the argument is that as our married woman's act gives to the wife the right to her own business and her own earnings and emancipates her property and earnings from her husband's control, the husband can no longer recover for loss of services. It will be observed that the court in this instruction did not submit to the jury generally the determination of the value of the wife's services, but restricted the jury to a consideration of the extent to which her injuries had incapacitated her from "performing all the duties of a wife that reasonably devolved upon her in the marriage relation." To this extent the husband can recover notwithstanding the married woman's act. As said in *Mewhirter v. Hatten*, 42 Ia., 288, on a precisely similar question, "We feel very clear that the legislature did not intend by this section of the statute to release and discharge the wife from her common law and scriptural obligation and duty to be a help-meet to her husband. If such construction were to be placed upon the statute, then the wife would have a right of action against the husband for any domestic services or assistance rendered by her as wife; for her assistance in the care and

nurture and training of his children she could bring her action for compensation; she would be under no obligation to superintend and look after any of the affairs of the household unless her husband paid her wages for so doing. Certainly such consequences were not intended by the legislature, and we cannot so hold in the absence of positive and explicit legislation."

Only two or three questions remain. One relates to the refusal of the court to submit certain questions to the jury for special findings. The submission of such questions must be left to the sound discretion of the trial court, and there was in this case certainly no abuse of discretion. The other question raised is that the damages were excessive. The wife's injuries were severe and probably permanent. The verdict was only $900, including probably $150 for actual expenditures. The claim that the damages are excessive seems, under this state of affairs, trivial.

JUDGMENT AFFIRMED.

POST, J., not sitting.